IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED

OCT 23 2019

Clerk, U.S District Court
District Of Montana
Missoula

SARA HAMILTON,

        Plaintiff,

vs.

GLAXOSMITHKLINE, LLC,

        Defendant.

CV 18–54–M–DLC

ORDER

Before the Court is The Motion for Summary Judgment of Defendant

Glaxosmithkline, LLC ("GSK"). (Doc. 20.) GSK seeks summary judgment on

each of the eight counts alleged in Plaintiff Sara Hamilton's First Amended

Complaint, all of which arise from the termination of Hamilton's employment at

GSK's vaccine manufacturing facility in Hamilton, Montana.

## FACTUAL BACKGROUND

GSK hired Hamilton as an occupational health nurse for its Montana vaccine

manufacturing facility in September 2008. (Doc. 32 at 2–3.) Over time, her job

began to encompass more safety-related tasks, and her direct supervisor was

Suzette Smith, the Hamilton facility's safety compliance and programming

manager. (Doc. 22-2 at 2; 22-4 at 3.) Hamilton generally received good reviews

-1-

for her work, earning an "Outstanding Performance" rating from 2011 through 2013 and "Strong Performance" from 2014 through 2015. (Doc. 22-3 at 14.)

However, it appears that Hamilton and Smith struggled to create a positive working relationship. Smith initially reported concerns regarding Hamilton's job performance in May 2015. (Doc. 22-2 at 2.) GSK's Employee Relations department, which handled Smith's report, decided that it did not have enough information to take action and asked Smith to provide informal coaching and to document her concerns and any interventions taken. (Docs. 22-2 at 2; 22-3 at 14; 32-2 at 6.) At some point prior to August 6, 2019, Smith brought the matter of Hamilton's performance up again, seeking a more formal resolution. (Doc. 22-3 at 14.) A performance counseling memo for Hamilton, prepared by Smith in consultation with the Employee Relations department, was finalized on August 6, 2019. (Doc. 22-3 at 15–16, 18–20.) The memo identified Smith's areas of concern and provided for a 60-day review of Hamilton's progress. (Doc. 22-3 at 15–16.)

Before the memo could be shared with Hamilton on August 6, though, Hamilton reported that she would be out of the work for at least two days as a result of "ulcer due to work stress." (Doc. 22-3 at 17.) Hamilton received the

memorandum that same day, but she refused to sign it. (Doc. 22-3 at 15–16, 18–20.) Hamilton did not return to work at any time after August 6.

Two days later, on August 8, Hamilton spoke with Suzanne Quinn, a nurse case manager within GSK's benefits coordination department, and Quinn's supervisor, Candy Bertini, to coordinate short-term disability benefits. (Doc. 22-1 at 3.) At that time, Hamilton told Quinn and Bertini that she expected she would be unable to return to work for one to two weeks. (Doc. 22-1 at 3.) Following Quinn's and Bertini's directions, on September 16, 2016, Hamilton submitted a certification form from her primary care provider, Dr. Teresa Borino, who wrote that Hamilton was unable to work at that time due to her diagnoses of abdominal pain, nausea, fatigue, and anxiety. (Doc. 22-3 at 37.) That day, Hamilton's claim for short-term disability benefits was approved. (Doc. 22-3 at 38.)

Hamilton and Dr. Borino filled out a second short-term disability certification form on October 6, 2016. Dr. Borino listed diagnostic codes for anxiety and gastritis on the form, and she wrote that Hamilton could return to work the following Monday if the following accommodations were made:

(1) Temporary medical/situation advisor Dr. D. Stevens (Siebens) [sic].[1]

---

[1] Hamilton testified at her deposition that Dr. Siebens, a GSK employee, supervised her at one point in the past and that he had agreed that it might be appropriate to supervise her again on a temporary basis. (Doc. 32-1 at 14.)

–3–

> (2) One-on-one mediator who is neutral with defined, agreed upon role. Patient may go to this person if there is conflict/concerns. Problem solving in safe environment.

> (3) Clearly defined approved job description.

(Doc. 22-3 at 40.)

GSK responded on October 26, 2016 that it was "unable to approve the requested work adjustments as accommodations," and it enclosed a copy of Hamilton's job description, which she had signed two months earlier. (Doc. 22-3 at 41–44.) GSK also asked Hamilton to "contact [the HR manager] to discuss resources available to you or any other concerns you may have" and to "discuss any additional potential accommodation requests you may have to enable you to perform the essential functions of your role as Clinical Coordinator." (Doc. 22-3 at 44.) Hamilton sent a short note from Dr. Borino to GSK on November 2, which read, in its entirety:

> To manage or improve Sara Hamilton's illness the following accommodations need to be provided.

> (1) New manager needs to be provided. A temporary may be provided, Dr. Siebens, until the new manager can be appointed at the site.

> Or

> (2) One to one mediator who is a neutral with defined agreed upon role. Pt may go to that person if there is conflict/concerns. Problem solving skills for a safe environment.

(3) Mediation will include approved job description and RN roles and
duties.

(Doc. 22-3 at 45.)

GSK sent a lengthy response letter to Hamilton's then-attorney on December

13, 2016, in which it referred to prior telephone conversations between the parties.

(Doc. 22-3 at 46–48.) GSK wrote that it "has engaged in the interactive process

with Ms. Hamilton to consider her request for accommodations" but that was

"unable to provide" the specific accommodations requested. (Doc. 22-3 at 47.)

GSK summarized numerous attempts to clarify the accommodations requested by

Dr. Borino. (Doc. 22-3 at 47.) It also stated that GSK, in fact, had "met these

requested recommendations, but it did so outside of the accommodations process

since these services are available to all employees regardless of disability." (Doc.

22-3 at 48.) It noted that nurse case manager Quinn served as Hamilton's

"designated medical advisor" from the time Hamilton first applied for disability

benefits. (Doc. 22-3 at 48.) As for Hamilton's request for a mediator, GSK

"offered Ms. Hamilton a designated HR representative to discuss resources

available to Ms. Hamilton regarding workplace conflicts or concerns." (Doc. 22-3

at 48.) And it wrote that it had already provided a copy of Hamilton's job

description, which she herself had recently signed. (Doc. 22-3 at 48.)

In regard to Hamilton's continued receipt of short-term disability benefits, GSK stated that "the certification Dr. Borino provided fails to support Ms. Hamilton's eligibility for [short-term disability] benefits" because: (1) "Dr. Borino's diagnoses do not support an ongoing absence work"; and (2) Dr. Borino, a family practitioner, is not sufficiently credentialed to assess and prescribe accommodations for Hamilton's claimed disabilities. (Doc. 22-3 at 47.) Because Hamilton had exceeded the recommended maximum number of days off attributable to gastritis,[2] GSK asked that Hamilton attend an independent medical examination to address whether Hamilton's diagnosis of anxiety entitled her to further benefits. The medical exam would focus on Hamilton's emotional and mental health, and the examiner sent Hamilton a focused mental health questionnaire to complete prior to the exam. (Doc. 22-3 at 50–61.) The examiner noted that GSK required Hamilton's participation in the exam to continue her eligibility for short-term disability benefits. (Doc. 22-3 at 50.)

Hamilton initially agreed to the medical exam. However, on January 30, 2017—approximately two weeks before the scheduled exam—she submitted a note from Dr. Borino stating that Hamilton's anxiety was not a disability:

---

[2] GSK refers to guidelines established by the Workloss Data Institute to anticipate work absences related to health problems. According to the Institute, at the time Hamilton filed her claim, the average work absence duration for gastritis was zero days and the maximum was 23 days. (Doc. 22-1 at 4.)

> Sara Hamilton ... has been seen, evaluated, had endoscopy, for
> abdominal pain. Abdominal pain was diagnosed as gastritis. A
> precipitating factor in her gastritis was anxiety which was situational in
> relationship to her work environment. This anxiety is not disabling.
> This anxiety was completely related to a situation. It only occurred in
> relationship to specific event[s]/people at work. It was never a daily
> event if that situation did not arise. It did not affect her concentration
> or the ability to do her job.

(Doc. 22-3 at 64.) Hamilton did not attend the exam or complete the questionnaire.

GSK responded by letter on February 10, 2017, denying further leave, noting that the medical exam had been canceled, and asking Hamilton to "bring to our attention any additional forms of accommodation which you may want to be considered in an effort to assist with your return to work." (Doc. 22-3 at 65.) Hamilton continued to avow that she was unable to return to work, and she did not submit any additional proposals for accommodation. Nor did she return to work. She was officially terminated on March 20, 2017, five days after GSK's final deadline for her return to work. (Doc. 22-3 at 69.)

Hamilton filed a formal charge with the Montana Human Rights Bureau in May 2017.[3] She now sues GSK for violations of the Americans with Disabilities Act ("ADA") and the Montana Human Rights Act ("MHRA").

---

[3] The Court does not take note of the factual findings reached by the Montana Human Rights Bureau. Contrary to GSK's argument (*see* Doc. 36 at 6), the MHRB's findings do not fall within the current language of Federal Rule of Evidence 803(8), which exempt from the rule against hearsay agency factual findings in limited cases involving the government.

## LEGAL STANDARD

GSK moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). The Court may grant GSK's motion only if GSK "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Hamilton alleges eight claims for relief, all of which relate to the termination of her employment at GSK's vaccine manufacturing facility. Four arise under the federal ADA, and four arise under analogous provisions within the state MHRA. Federal law governs those claims brought under the ADA. 28 U.S.C. § 1331. Although state law governs Hamilton's MHRA claims, the parties agree that there is no meaningful distinction between the federal and state standards and that the state standards are themselves relatively underdeveloped. Thus, the Court applies the law developed in the United States Supreme Court and the Ninth Circuit Court of Appeals governing the ADA's employment provisions.

"The ADA prohibits an employer from discriminating 'against a qualified individual with a disability because of the disability.'" *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)). "[T]o establish a prima facie case of discrimination under the ADA[, a former employee] must show that she: (1) is disabled; (2) is qualified; and (3) suffered an adverse

-8-

employment action because of her disability." *Snead v. Met. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). "[I]f the employer disclaims any reliance on the employee's disability in having taken the employment action, *McDonnell Douglas* Title VII disparate impact analysis should be used to determine if the employer's reason is pretextual." *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1175–76 (9th Cir. 1998). Under *McDonnell Douglas*, once the plaintiff's initial burden of establishing a prima facie case is satisfied, "[t]he burden then . . . shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer does so, the burden shifts back to the employee to demonstrate that the employer's "stated reason . . . was in fact pretext." *Id.* at 804.

## DISCUSSION

Hamilton claims that GSK's termination of her employment violated federal and state law under four theories: (1) failure to provide reasonable accommodations; (2) discriminatory termination; (3) retaliatory termination; and (4) mandating an unlawful medical examination. Discovery is complete, and the Court finds that the record clearly establishes GSK's entitlement to summary judgment on all eight counts.

–9–

## I.    Counts 1 & 2: Failure to Accommodate

The ADA's prohibition of discrimination in the workplace extends to failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship . . . ." § 12112(b)(5)(A).  A plaintiff alleging failure to accommodate must show: "(1) [she] is disabled within the meaning of the ADA; (2) [she] is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [she] suffered an adverse employment action because of [her] disability." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (per curium).  For purposes of its motion, GSK does not dispute that Hamilton's health issues rendered her "disabled within the meaning of the ADA." (*See* Doc. 21 at 18 n.4.)

Rather, the focus is on whether GSK failed to provide reasonable accommodations to enable Hamilton "to perform the essential functions of the job." *Allen*, 348 F.3d at 1114.  "The term 'reasonable accommodation' may include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . training materials or policies, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9); *see also*

29 C.F.R. § 1630.2(o). An employer has a legal duty "to engage in an interactive process to consider whether an alternative accommodation within the company would be possible." *Allen*, 348 F.3d at 1115.

Hamilton alleges that GSK failed to grant her requests for reasonable accommodations and that it refused to participate in an interactive process to determine and propose alternative accommodations. Hamilton's complaint does not specifically list the accommodations that were wrongfully refused. Initially, her doctor requested that GSK: (1) assign Hamilton to a new supervisor; (2) hire or appoint a neutral mediator to work with Hamilton and Smith; and (3) provide a clear job description. As GSK points out, Hamilton signed a clarified job description in August 2016—two months before the accommodation request was made—and GSK provided that job description to Hamilton in response to her request. (Doc. 22-3 at 41–43, 44.) As to Hamilton's requests for a new supervisor and/or outside mediator, GSK argues that the proposed accommodations were not reasonable. The Court agrees.

### A. New Supervisor

Hamilton's primary request appears to have been an assignment to a supervisor other than Smith. GSK argues that Hamilton's request for a new supervisor is unreasonable as a matter of law under binding precedent. But the

cited case, *Roberts v. Permanente Medical Group, Inc.*, 690 Fed. App'x 535 (9th Cir. 2017), is unpublished and therefore nonprecedential. *See* 9th Cir. R. 36-3.

The Seventh Circuit has clearly held that, as a matter of law, the ADA does not entitle a plaintiff to a new supervisor. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524–27 (7th Cir. 1996). Because GSK does not argue that Hamilton is not disabled under the ADA, much of the analysis in *Weiler* is distinguishable. *Id.* at 524 ("The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance."). However, *Weiler* also provides authority for the argument that assignment to a new supervisor is not a reasonable accommodation because the ADA does not entitle a plaintiff or a court to interfere with an employer's personnel decisions. *Id.* at 525–26; *see also Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 581 (3d Cir. 1998) ("[B]y asking to be transferred away from individuals who cause him prolonged and inordinate stress, [the plaintiff] is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work. However, nothing in the ADA allows this shift in responsibility."). Some district courts within this Circuit have, citing *Weiler*, applied a similar per se rule. *See Roberts v. Kaiser Found. Hosp.*, No. 2:12-cv-2506-CKD, 2015 WL 545999, at *7 (E.D. Cal. Feb. 10, 2015)

-12-

("[T]his requested accommodation was per se unreasonable and [the employer] properly denied it), *aff'd sub nom. Roberts*, 690 F. App'x 535; *accord Gazzano v. Stanford Univ.*, 2014 WL 794803, at *4 n.59 (N.D. Cal. Fen. 27, 2014).

The Court does not agree with GSK that it should abandon its duty to determine, looking to the facts of the case, whether any specific accommodation is in fact reasonable in favor of a per se rule such as that announced in *Weiler*. Notably, the Second Circuit has rejected *Weiler* in favor of a softer presumption against reasonableness:

> [T]he question of whether a requested accommodation is a reasonable one must be evaluated on a case-by-case basis. A per se rule stating that the replacement of a supervisor can never be a reasonable accommodation is therefore inconsistent with our ADA case law. There is a presumption, however, that a request to change supervisors is unreasonable, and the burden of overcoming that presumption (i.e., of demonstrating that, within the particular context of the plaintiff's workplace, the request was reasonable) therefore lies with the plaintiff.

*Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir. 1999).

The reasoning of the Seventh Circuit in *Weiler*—that assignment to a different supervisor is not a reasonable accommodation because it asks a court to interfere with personnel decisions—is unpersuasive. If a court were to hold that, under the facts and circumstances of a particular case, assignment to another supervisor was a reasonable accommodation, its decision would not necessarily

-13-

force a dramatic restructuring of an organizational chart. For example, imagine that a large business employs forty customer service representatives, twenty of whom are randomly assigned to one supervisor, and twenty to another. Assuming that one of the representatives has a disability which means that she can successfully work under one supervisor but not the other, reassignment would carry with it minimal expense and disruption.

In any event, a per se rule is unnecessary because ordinary principles of ADA law suffice. The plaintiff bears the burden of establishing a prima facie case for failure to accommodate, which includes the burden to show that she is qualified, meaning that she is able to "perform the essential functions of the job with reasonable accommodation." *Allen*, 348 F.3d at 1114. Generally, to meet this initial burden, the "plaintiff/employee (to defeat a defendant/employer's motion for summary judgment) need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). Alternatively, the plaintiff may instead "show that special circumstances warrant a finding that . . . the requested 'accommodation' is 'reasonable' on the particular facts. *Id.* at 405. If the "plaintiff has made this showing, the defendant/employer then must show special (typically case-specific)

-14-

circumstances that demonstrate undue hardship in the particular circumstances."
*Id.* at 402.

In this instance, Hamilton has not met her initial burden of showing that she can do the job with "reasonable accommodation" because the requested accommodation is not "reasonable on its face." *Id.* at 401. Although the Court does not adopt a per se rule against supervisor reassignment, it does find the significant body of caselaw supporting GSK's position relevant to its analysis. *See U.S. Airways*, 535 U.S. at 403 (looking to "analogous case law" to "support [the Court's] conclusion that a proposed accommodation will not be reasonable in the run of cases"). The reasoning that drove the Court's decision in *Roberts*, 690 F. App'x 535—that the Equal Employment Opportunity Commission has issued guidelines classifying a request for a new supervisor as unreasonable—is also significant here. *EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, Question 33 (EEOC Notice No. 915.002, Oct. 17, 2002) (Q: "Does an employer have to change a person's supervisor as a form of reasonable accommodation?" A: "No. An employer does not have to provide an employee with a new supervisor as a reasonable accommodation."). A request for a new supervisor is not an ordinary ADA request, and surely most employers would deny this accommodation.

-15-

Nor has Hamilton "show[n] that special circumstances" render the requested accommodation "reasonable" in this instance. She has raised a factual dispute as to whether other GSK employees have been reassigned to different supervisors on the basis of supervisor-employee conflict. (Doc. 32-3 at 3–4.) However, the factual dispute is not material, as the reassignment of other employees does not indicate that it is reasonable to reassign Hamilton, the only occupational health nurse in the vaccine manufacturing facility, to any supervisor other than Smith. Hamilton's job duties included safety responsibilities in addition to her occupational health duties, and it is logical that she would—as her job description required—report to Smith, the safety supervisor at the facility. (Doc. 22-3 at 41.) Hamilton gives no reason to suggest that her proposed accommodation would be reasonable because it "will not likely make a difference" to GSK's operations. *U.S. Airways*, 535 U.S. at 405.

## B. Mediator

Hamilton also requested a neutral mediator as a reasonable accommodation. Dr. Borino suggested Hamilton could return to work if she were granted a "[o]ne-to-one mediator who is neutral with defined agreed upon role." (Doc 22-3 at 40.) Looking primarily to Hamilton's deposition testimony, GSK argues that the request was pretextual and that "there is no question that what Hamilton ***really***

wanted was someone other than Smith to supervise her." (Doc. 22 at 20.)

However, Hamilton did ask for a mediator, and so the Court must determine

whether she was entitled to one as a reasonable accommodation under the ADA.

GSK did, in fact, offer mediation through its human resources department,

including "a dedicated HR representative to discuss resources available . . .

regarding workplace conflicts or concerns." (Doc. 22-3 at 48.) Thus, the issue is

whether GSK's refusal to appoint or hire an additional mediator violated the ADA.

It did not. Hamilton's request was not "reasonable on its face." *U.S. Airways*, 535

U.S. at 401. Nor did Hamilton meet her burden of demonstrating "that special

circumstances warrant a finding that . . . the requested 'accommodation' is

'reasonable' on the particular facts. *Id.* at 405.

## C. Interactive Process

Finally, Hamilton alleges that GSK failed to engage in an interactive process

to identify alternative reasonable accommodations. "[N]otifying an employer of a

need for an accommodation triggers a duty to engage in an 'interactive process'

through which the employer and employee can come to understand the employee's

abilities and limitations, the employer's needs for various positions, and a possible

middle ground for accommodating the employee." *Snapp v. United Transp.*

*Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). That said, "there exists no stand-

alone claim for failing to engage in the interactive process." *Id.* Rather, at the summary-judgment phase, "an employer [who] fails to engage in good faith in the interactive process" bears the burden of "prov[ing] the unavailability of a reasonable accommodation." *Id.*

Here, the undisputed facts clearly establish that GSK participated in the interactive process in good faith. GSK regularly informed Hamilton of the resources available to her and asked her to help identify workable solutions. Hamilton argues that GSK did not fulfill its legal obligations because it never offered any alternative accommodations. However, depending on one's perspective, GSK either partially satisfied Hamilton's request for accommodations or offered alternatives when it: (1) assigned Quinn, a medical case manager, to Hamilton's disability claim; (2) informed Hamilton of in-house counseling and mediation services; (3) provided the job description Hamilton signed in August 2016; and (4) granted Hamilton six months of short-term disability leave.

Hamilton further argues that "GSK never had a phone or face-to-face conversation with Hamilton's physician to clarify her need for an accommodation and determine what accommodation would work for Hamilton." (Doc. 33 at 20.) Setting aside the obvious privacy concerns implicated by such a conversation,

GSK is not under an obligation to consult with its employee's doctor but with the employee herself.

Put simply, Hamilton refused to come back to work without a supervisor or outside mediator. The documentary evidence makes clear that, from September 2016 through March 2017, GSK attempted to work with Hamilton to find an alternative solution. (Doc. 22-3 at 27–36.) Because it was Hamilton who refused to come to the table, the Court cannot find that there is any meaningful factual dispute regarding GSK's failure to engage in the interactive process in good faith.

## II.    Counts 3 & 4: Discriminatory Termination

"To prevail on an ADA claim, a plaintiff must establish: (1) that she has a disability; (2) that she was a qualified individual capable of performing the essential functions of the job either with or without reasonable accommodation; and (3) that she was unlawfully discriminated against because of her disability." *McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1115 (9th Cir. 1999). Because Hamilton has not shown her ability to perform her former work with or without reasonable accommodation, she cannot prevail on a claim for discriminatory termination. *See Samper v. Providence St. Vincent Med. Ctr.*, 6755 F.3d 1233, 1237 (9th Cir. 2012) ("It is a rather common-sense idea . . . that if one

-19-

is not able to be at work, one cannot be a qualified individual.") (internal quotation marks and citation omitted)).

The undisputed evidence shows that Hamilton would not return to work if GSK did not accept her proposed accommodations. Hamilton's only argument on this point is that "if GSK had engaged in the interactive process in good faith, reasonable accommodations could have been identified and she could have returned to work much earlier, and certainly before her termination." (Doc. 33 at 23.) The argument is circuitous. If GSK failed to engage in the interactive process or to provide her requested reasonable accommodations, then she was terminated due to GSK's failure to comply with the ADA, making her termination wrongful. However, if there is no failure to accommodate, then it was wholly reasonable to terminate Hamilton's employment when Hamilton refused to come to work without her proposed accommodations. Because there was no failure to accommodate, there was no discriminatory termination.

### III. Counts 5 & 6: Retaliation

Hamilton alleges that she was terminated for engaging in a protected activity—filing claims with the Montana Human Rights Bureau. The ADA provides that "[n]o person shall discriminate against any individual because . . . such individual made a charge, testified, assisted or participated in any manner in

an investigation, proceeding or hearing under [the ADA]." 42 U.S.C. § 12203(a).

To establish a prima facie case for retaliation, a plaintiff must show: "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). Here, GSK does not dispute elements (1) or (2), focusing only on whether Hamilton has presented evidence of causation.

The Court finds that Hamilton has established a prima facie case but that GSK is nonetheless entitled to summary judgment. Hamilton's burden to establish her prima facie case is relatively light; she need only show some evidence of causation. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)) ("[U]nder the *McDonnell Douglas* framework, 'the requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."). Here, Hamilton has met her minimal burden because her reports of discrimination shortly predated her termination, and temporal proximity may be sufficient to establish causation. *See, e.g.*, *Brown*, 336 F.3d at 1187; *Villiarimo*, 281 F.3d at 1065.

Under *McDonnell Douglas*, the burden then shifts to GSK to show that Hamilton's termination was not in fact retaliatory but instead motivated "some legitimate, nondiscriminatory reason." *McDonnell Douglas*, 411 U.S. at 802. GSK has met its burden. GSK communicated clearly and regularly that Hamilton could return to work at any time. Hamilton was no longer excused from work on March 15, 2017, and GSK terminated her on March 20, 2017 in accordance with its neutral, nondiscriminatory policy that an employee will be terminated after three unexplained absences. (Doc. 22-3 at 69.)

Because GSK has met its burden of showing a legitimate reason for termination, the burden shifts back to Hamilton to demonstrate the absence of pretext. *McDonnell Douglas*, 411 U.S. at 804. Hamilton has failed to meet that burden; she argues only that "a strong inference can be made" from the circumstantial evidence of temporal proximity. However, "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001). Hamilton has presented no such evidence; "as a result, 'she has not shown that either . . . a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.'" *Brown*, 336 F.3d at 1188 (quoting *Villiarimo*, 281 F.3d at 1063).

## IV.   Counts 7 & 8: Prohibited Medical Examination

Finally, Hamilton alleges that GSK violated the ADA's prohibition against medical examinations when it scheduled an independent medical exam for the purpose of assessing Hamilton's diagnosed anxiety.  "A covered entity shall not require a medical examination . . . unless such examination or inquiry is shown to be job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  The EEOC clarifies that "[e]mployers . . . may obtain medical information about an employee when the employee has requested a reasonable accommodation and his or her disability or need for accommodation is not obvious."  *EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act ("ADA")*, 2000 WL 33407183 (July 6, 2000).

Here, of course, there was no medical exam.  Hamilton's doctor wrote a note stating that Hamilton's anxiety was not disabling, and the exam was cancelled.  Hamilton does not argue that she was terminated because she refused to participate in the medical exam or fill out the related questionnaire.[4]  Nor could she, when it is clear that the exam was scheduled for the purpose of determining Hamilton's

---

[4] The Court notes that Hamilton has alleged that she was told she would be terminated if she did not attend the medical exam.  (Doc. 32-3 at 4.)  However, because the Court assumes that Hamilton has not failed to state a claim, *see infra* p. 24, any factual dispute on this point is immaterial.

entitlement to benefits related to an anxiety disorder. And nothing happened as a result of Hamilton's refusal to participate; she received months of short-term disability benefits, and she was terminated after she failed to return to work. Nonetheless, Hamilton claims that she "suffered emotional distress damages as a result of the [medical exam] and questionnaire requested by GSK," triggering a flare-up of her gastritis. (Doc. 33 at 32.)

Setting aside the question of whether Hamilton has alleged a cognizable cause of action under § 12112(d)(4)(A), the Court finds that GSK is entitled to summary judgment. Even where a goal of a medical exam "was to determine whether the [employee] was 'an individual with a disability . . . or the nature or severity of [her] disability," an employer may require the exam if it "is shown to be job-related and consistent with business necessity." *Yin v. California*, 95 F.3d 864, 867–68 (9th Cir. 1996) (second set of brackets in original).

Here, "[t]here is no question that the proposed medical examination was job-related." *Id.* at 868. Hamilton's doctor had listed gastritis and anxiety as the basis for the proposed accommodations. GSK turned to an external organization, the Workloss Data Institute, to determine the number of days missed by employees suffering from gastritis. The maximum guideline absence was 23 days, and Hamilton had missed over 60 before the exam was proposed. The record clearly

indicates that GSK was trying to determine whether, when, and under what conditions Hamilton would be able to return to work, as the diagnosis of gastritis did not support her extended absence. GSK reasonably wanted Hamilton to return to work. "[T]here is no doubt that [Hamilton's] supervisors' ultimate purpose was only to try to determine whether [Hamilton] was capable of doing her job." *Id.* Because GSK scheduled the exam out of business necessity, Hamilton's claims cannot survive.

Accordingly, IT IS ORDERED that Defendant GlaxoSmithKline, LLC's motion for summary judgment (Doc. 20) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment for the Defendant and shall close this case. All other pending motions are DENIED as moot.

DATED this 23rd day of October, 2019.

Dana L. Christensen, Chief Judge
United States District Court